UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

WINSTON GAJADHAR,

                       Petitioner,

                       v.

ROBERT E. ERCOLE, Superintendent, Green Haven Correctional Facility,

                       Respondent.

**MEMORANDUM & ORDER**

No. 09 Civ. 1964 (LBS)

SAND, J.

      Petitioner Winston Gajadhar brings this timely *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he alleges he is being held in custody in violation of his federal constitutional rights.  Petitioner's claim arises from a judgment of conviction entered after a jury trial in the New York Supreme Court, New York County for Murder in the Second Degree and Attempted Robbery in the First Degree.  Petitioner was sentenced to concurrent, indeterminate prison sentences of twenty years to life on the murder count and five to fifteen years on the attempted robbery count.  Petitioner alleges five violations of his federal constitutional rights: (1) dismissal of two jurors without an adequate inquiry; (2) improper comments by the prosecutor during opening and closing statements; (3) insufficiency of the evidence; (4) deprivation of the fundamental right to a jury trial of twelve members; and (5) denial of effective assistance of trial counsel.  For the following reasons, the petition for a writ of habeas corpus is denied.

**I.     Background**

The evidence at trial demonstrated that on January 19, 1994, Petitioner and an armed accomplice visited the Manhattan apartment where Sammy Fiki and his brother, Mosad Elfeky, had established an office for their taxi business.  At that time, Petitioner operated a business in Brooklyn called "Blessing Auto Collision."  The business specialized in buying damaged police cars at auctions, repairing the cars, and then reselling them to be used as New York taxis.  In late 1993, a dispute ensued between Petitioner and Fiki over repairs that Petitioner had done for Fiki.  Petitioner believed that Fiki owed him $1500.  When Petitioner and his accomplice entered the apartment, his accomplice demanded that Fiki turn over the money.  Fiki denied knowing about the money Petitioner believed that he was owed.  Petitioner then told his accomplice to "take care" of Elfeky.  (Resp. Opp. 2.)  Elfeky began to struggle with Petitioner and his accomplice.  Hishaim Omar, who had been sleeping in an adjacent bedroom, walked into the vestibule and saw the fight between Elfeky, Petitioner, and his accomplice.  Omar noticed that Petitioner's accomplice had a gun, and Petitioner told Omar not to get involved.

Petitioner's accomplice shot Elfeky in the chest and then turned to Omar and shot him in the abdomen.  Fiki called 911 from the office phone and provided the operator with his address and a description of Petitioner's accomplice.  While Fiki was still on the phone with the operator, Petitioner's accomplice shot him in the abdomen.  Petitioner and his accomplice fled the apartment.  Police and emergency medical personnel arrived at the apartment shortly thereafter.  Fiki, Omar and Elfeky were all taken to the hospital.  Elfeky was pronounced dead soon after arriving at the hospital.  Omar and Fiki suffered

severe internal injuries but survived after extensive surgeries.  Omar and Fiki both told detectives that Petitioner was one of the men that had attacked them.  Detectives went to Petitioner's apartment and place of work but could not locate him.  The police believed that Petitioner had returned to his native country, Trinidad.

On February 28, 1994, a Grand Jury charged Petitioner with two counts of murder in the second degree, one under the theory that he intentionally caused the death of Elfeky, the other under a felony murder theory, alleging that he had caused Elfeky's death during the course of an attempted first degree robbery.  Petitioner was also charged with attempted first degree robbery, and two counts each of attempted second degree murder and assault in the first degree with respect to the shootings of Omar and Fiki.  In January 1999, the police learned that Petitioner had returned to the United States but were not able to arrest him.  When Petitioner flew back to Trinidad on January 23, 1999, he was stopped by an immigration official who suspected that he was using a falsified passport.  The Trinidadian officials learned Petitioner's true identity and of the pending murder charge, and on December 10, 1999, Petitioner was extradited to the United States to face the charges against him.

Petitioner's jury trial began on September 13, 2002.  On October 10, 2002, after two days of jury deliberations, one of the deliberating jurors fell ill and was admitted to the hospital.  The juror was expected to remain in the hospital for over a week.  Petitioner opposed a mistrial and waived, orally and in writing, his right to a twelve-person jury.  The jury proceeded with only eleven jurors.  Petitioner was convicted of felony murder and attempted robbery in the first degree and acquitted of the remaining charges.  Petitioner was sentenced to concurrent sentences of twenty years to life and five to fifteen

years for the murder and robbery charges, respectively.  Petitioner's conviction was affirmed by the New York Supreme Court, Appellate Division, First Department, *People v. Gajadhar*, 38 A.D.3d 127 (2007), and the New York Court of Appeals, *People v. Gajadhar*, 9 N.Y.3d 438 (2007).

## II.     Standard of Review

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A petitioner may only bring a claim under 28 U.S.C. § 2254 on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A claim under Section 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), will only succeed if the petitioner shows that the state court decision was either "contrary to, or involved an unreasonable application of, clearly established federal law," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)-(2).

With respect to the "contrary to" clause, the writ may be issued if (1) the state court decision is contrary to Supreme Court precedent on a question of law; or (2) if the state court decision addresses a set of facts "materially indistinguishable" from a relevant Supreme Court case and arrives at a result different than that reached by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A state court decision involves an "unreasonable application" of Supreme Court precedent when the state court either "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or

4

"unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.  In order to establish that a state court decision is an unreasonable application, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  The decision must be "objectively unreasonable." *Id.*  Factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**III.   Discussion**

    **a. Exhaustion**

Prior to seeking habeas relief, a petitioner must exhaust all available state remedies.  *See, e.g., Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000); *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991).  In order to exhaust his or her claim, a defendant must give the state's highest court "a fair opportunity to pass on his [or her] federal claim." *Morgan*, 204 F.3d at 369.  Respondent contends that only Petitioner's claim regarding waiver of the twelve-member jury has been exhausted.

In New York, a defendant who has appealed his conviction to the Supreme Court's Appellate Division and seeks review from the New York Court of Appeals must apply to the New York Court of Appeals for a certificate granting leave to appeal.  *See* N.Y. Crim. Proc. Law § 460.20 (McKinney 2005).  In *Grey v. Hoke*, the Court of Appeals for the Second Circuit addressed the question of whether submitting a leave letter, which addressed only one claim specifically but attached the defendant's appellate division brief, was sufficient to exhaust all of the additional claims contained in the

attached brief. 933 F.2d at 119. The Second Circuit held that attaching the brief did not "fairly apprise the court" of the additional claims. *Id.* at 120.

However, in *Morgan v. Bennett*, 204 F.3d 360 (2d Cir. 2000), the Second Circuit found that where the leave letter attached the appellate briefs and included a sentence stating that "[w]e request this Court to consider and review *all issues outlined in defendant-appellant's* brief and *pro se supplemental brief*," the "statement was sufficiently specific to alert the Court of Appeals that [the defendant] sought review of all of the issues raised in his *pro se* supplemental Appellate Division brief." *Morgan*, 204 F.3d at 369-70 (emphasis in original). In *Jordan v. Lefavre*, 206 F.3d 196 (2d Cir. 2000), the Second Circuit further clarified the exhaustion requirement, finding that "[a]rguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims." *Jordan*, 206 F.3d at 198. In order to adequately apprise the state court, the defendant must either "explicitly alert[] the state court to each claim" or, as in *Morgan*, clearly state that the defendant is seeking leave to appeal "all of the claims raised in the attached brief." *Id.* at 199.

Although Petitioner's leave application focused on the waiver issue, the footnote on page four explicitly states that "Appellant also seeks leave on the other issues raised in defense counsel's Appellate Division brief" and "on the issues raised in [Appellant's] *pro se* supplemental brief." (Resp. Opp. Ex. I at 4 n.1.) The footnote then specifically identifies all of the issues raised in the instant petition. This footnote not only indicates that leave is being sought as to all of the claims in the attached briefs but also specifically identifies those claims. The footnote was sufficient to adequately apprise the state court

6

of Petitioner's remaining claims.  *See Jordan*, 206 F.3d at 199.  All of Petitioner's claims are exhausted.

### b. Procedurally Barred Claims

Where a state court judgment rests on a state law ground that is independent of the federal question and adequate to support the judgment, federal habeas review is generally not permitted.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  Federal habeas review is precluded where "the state court explicitly invokes a state procedural bar rule as a separate basis for decision."  *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).  In *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003), the Second Circuit held that three factors are particularly relevant in determining the propriety of reliance on a procedural default for denying habeas review on the merits: "(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest."  *Id*. (citation omitted).

Federal habeas review is available on a procedurally defaulted claim if petitioner can demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The Supreme Court has stated that a "miscarriage of justice" exists only in exceptional cases where the error probably resulted in the conviction of an innocent

individual.  *Schlup v. Delo*, 513 U.S. 298, 324 (1995) ("To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.").

### i.  Dismissal of Jurors Prior to Deliberations

Petitioner contends that he was denied a trial by an impartial jury when the trial court dismissed two jurors without first conducting a "thorough and reasonable" inquiry. (Pet. 48.)  One juror, Betty Santos, was discharged at the end of the first day of testimony due to financial difficulties and childcare issues.  (Resp. Opp. 27.)  The People objected to Santos being excused but defense counsel expressed concerns about Santos ability to function as a juror if she were not excused.  The second juror to be discharged was Petra Sansone, an alternate, who was excused because she had a surgery scheduled.  The defense did not object to her dismissal.  Petitioner appealed the dismissal of both jurors, arguing that the trial court failed to conduct a sufficient inquiry prior to excusing them. The Appellate Division denied Petitioner's claim, finding it unpreserved and unavailing. *Gajadhar*, 38 A.D.3d at 136-37.

A state appellate court's finding that a petitioner failed to preserve a claim for appellate review operates as a state procedural bar to federal habeas review.  *Id.* Petitioner claims that the Appellate Division's finding was "ambiguous" as to whether it was resolved on the merits or was unpreserved and, thus, this Court may review the claim *de novo*.  (Pet'r Reply 3); *see Messiah v. Duncan*, 435 F.3d 186, 196 (2d Cir. 2006) (finding ambiguity in the "disjunctive language in the Appellate Division's 'either/or' affirmance" of the petitioner's conviction).  The Appellate Division did not utilize

8

"either/or" language; rather, the court found that Petitioner's "contention that two jurors were disqualified without an adequate hearing is unpreserved *and* unavailing." *Gajadhar*, 38 A.D.3d at 136-37 (emphasis added).

The Appellate Division's determination that Petitioner failed to preserve his claim based on the dismissal of the jurors is clear and unambiguous and acts as a procedural bar to habeas review. Petitioner has failed to identify any "cause for the default" or demonstrated that a failure to review the claim would result in a "miscarriage of justice." *Coleman*, 501 U.S. at 750. Accordingly, we find that Petitioner's claim that he was denied the right to an impartial jury is barred from habeas review.

### ii. Prosecutorial Misconduct

Petitioner's claim that the prosecutor's comments in opening and closing deprived him of a fair trial is also procedurally barred. Petitioner raised only one objection to the prosecution's opening statement and did not raise any objections to the prosecution's closing statement. During the opening, defense counsel objected to the prosecution "going through all the medical injuries," to which the trial court said to the prosecutor, "I'm not sure why precisely all the details." (Resp. Opp. Ex. B at 55.) The prosecutor responded that the People were required to prove serious physical injury. (Resp. Opp. Ex. B at 55.) Petitioner did not raise any further objection or request a curative instruction. The Appellate Division concluded that "[t]he claim that the prosecutor's opening and closing statements deprived defendant of a fair trial is unpreserved by timely objection to the remarks now alleged to be inflammatory, and we decline to reach the issue in the interest of justice." *Gajadhar*, 38 A.D.3d at 136.

This holding is an independent and adequate ground and bars habeas review of Petitioner's claim.  Petitioner has not identified any cause for the default or alleged any miscarriage of justice that would result from the Court's refusal to review these claims.

### c. Sufficiency of the Evidence

"The rule of constitutional sufficiency derived from the Due Process Clause instructs that a conviction cannot be obtained 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . charged.'"  *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009) (*citing In re Winship*, 397 U.S. 358, 364 (1970)).  The relevant inquiry is not "whether [the federal court] believes that the evidence at the trial established guilt beyond a reasonable doubt" but rather "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  A "petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence."  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (emphasis omitted).

Petitioner contends that the trial record did not contain evidence sufficient to support a finding beyond a reasonable doubt of intent to forcibly steal.  (Pet. 30-31.)  In affirming Petitioner's conviction, the Appellate Division found that, "[w]hile, as defendant contends, the assailants might have harbored only 'an intent to injure or, perhaps, even to kill the occupants of the apartment,' the jury could reasonably have inferred from the assailants' conduct and the attendant circumstances that, beyond a reasonable doubt, their purpose was to recover the asserted debt by means of force or the

10

threat of force . . . and that such objective would have been achieved had it not been for their victims' courageous resistance." *Gajadhar*, 38 A.D.3d at 135.  The Appellate Division concluded that "the evidence establishes that defendant, acting in concert with his armed accomplice, attempted to commit robbery and, in the course of such crime, caused the death of Mosad Elfiki." *Id.*

The evidence at trial demonstrated that Petitioner believed that Fiki owed him $1,500.  Petitioner visited Fiki's office in an attempt to obtain the money he believed he was owed.  Petitioner knew that his accomplice was armed.  Petitioner's accomplice demanded the $1500.  When Fiki responded that he did not know what the accomplice was talking about, Petitioner said "take care of them."  Petitioner's accomplice then began shooting.  Petitioner points to two facts as evidence that he did not have larcenous intent.  First, Fiki told the 911 operator that a robbery was not in progress.  However, as the Appellate Division noted, a "layperson's perception of unfolding events during the course of a murderous assault is hardly dispositive of the sophisticated legal issue of whether a defendant's acts in furtherance of obtaining property by force were sufficient to constitute the crime of attempted robbery." *Gajadhar*, 38 A.D.3d at 136.  Second, Petitioner points to the large sum of money that was left in the apartment as evidence that Petitioner did not have larcenous intent.  Petitioner's failure to successfully consummate the robbery does not mean that he did not have the requisite intent.  Petitioner and his accomplice knew that 911 had been called.  A reasonable jury could infer that the money was left not because Petitioner did not intend to steal it, but because Petitioner had to flee before he could take the money.

Drawing all inferences in favor of the prosecution, a jury could find beyond a reasonable doubt that Petitioner had the required intent. The Appellate Division's determination that the evidence was sufficient is neither "contrary to, or involved an unreasonable application of, clearly established federal law" nor "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)-(2).

### d. Right to a Jury Trial of Twelve Members

The New York Court of Appeals held that Petitioner's waiver of the twelve-member jury was permissible under the New York Constitution. *Id.* Prior to 1938, the New York Constitution only allowed waiver of a jury trial in civil cases. Based on the state constitution's prohibition of jury trial waivers in criminal cases, the New York Court of Appeals held in *Cancemi v. People*, 18 N.Y. 128 (1858), that a guilty verdict reached by an eleven member jury violated the state constitution. In 1938, the state constitution was amended in order to permit waiver of a jury trial in criminal cases. Petitioner's appeal presented the question of whether in light of this amendment, *Cancemi* no longer applied and a defendant could waive a twelve-member jury. The *Gajadhar* court concluded that under certain circumstances, such as those presented, a defendant should be able to waive the twelve-member jury. *Gajadhar*, 9 N.Y.3d at 447. The court also noted that this conclusion was "consistent with the principle that criminal defendants can waive many fundamental constitutional rights." *Id.* at 448.

Federal habeas corpus relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal

12

court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). There is no federal constitutional right for a defendant to have a verdict rendered by a twelve-member jury. *See Williams v. Florida*, 399 U.S. 78, 101-103 (1970); *United States v. Stratton*, 779 F.2d 830, 831 (2d Cir. 1985). Given that there is no federal constitutional right to a twelve-member jury, the New York Court of Appeals determination that the twelve-member jury can be waived is not contrary to clearly established federal law. Rather, that determination is one purely of state law, which is not cognizable on habeas review.

### e. Effective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two part test to determine whether or not counsel's assistance was ineffective. 466 U.S. 668, 687 (1984). First, Petitioner must show that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* To establish that counsel was ineffective, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Second, the defendant must show that the deficient performance prejudiced the defense, which requires that petitioner show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Finally, "the court should recognize

that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Petitioner asserts that his counsel was ineffective for failing to present exculpatory evidence, neglecting to call favorable witnesses, and unreasonably advising him to waive his right to a twelve-person jury.  (Pet. 46.)  Specifically, Petitioner claims four alleged errors.  First, trial counsel should have called private investigator Leroy Swinney, regarding Fiki's statement that Petitioner "had nothing to do with" the crime.  (Resp. Opp. 57.)  Second, Petitioner argues that defense counsel should have called Marlon Bennett, who he asserts was the shooter.  Third, Petitioner claims that defense counsel should have introduced evidence that demonstrated an inconsistency in Detective Brennan's testimony.  Finally, Petitioner alleges error in defense counsel's advice to waive a twelve-member jury.

Where the state court has adjudicated the petitioner's claims of ineffective assistance of counsel on the merits, we review that decision under the deferential standard of AEDPA.  28 U.S.C. § 2254(d) (1)-(2); *see Henry v. Poole*, 409 F.3d 48, 67 (2d Cir. 2005).  "Thus, a petitioner whose claim is that he received ineffective assistance of counsel not only must satisfy the *Strickland* standard but also must show that the state court's rejection of his claim either was contrary to *Strickland* or was an unreasonable application of *Strickland*." *Poole*, 409 F.3d at 67.  In reviewing a habeas petitioner's claim of ineffective assistance of counsel, we "cannot simply conclude that the [state] court's application was erroneous; rather, we must find that there was '[s]ome increment of incorrectness beyond error.'" *Cox v. Donnelly*, 387 F.3d 193, 197 (2d Cir. 2004)

14

(*quoting Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)); *see also Henry*, 409 F.3d at 67.

The state court reviewed Petitioner's claims regarding Fiki's statement and the waiver of the twelve-member jury and found them to be without merit. The trial court found that defense counsel's decision not to use Fiki's statement to Swinney "was clearly a matter of reasonable trial strategy not to be second guessed here." (Resp. Opp. Ex. R at 6-7.) Although Fiki's statement might have benefited Petitioner in some respects, the statement was "entirely inconsistent" with the defense's argument that Petitioner was not present at the scene. (Resp. Opp. Ex. R at 6.) Thus, the trial court concluded that defense counsel's decision not to use the statement was reasonable. The Appellate Division rejected Petitioner's claim that defense counsel was ineffective because he advised Petitioner to waive his right to a twelve-member jury. The court found that "this was a strategic decision predicated on the belief that repeated notes from the jury during four days of deliberations pointed toward acquittal. Failed trial tactics do not invariably indicate ineffectiveness (see *People v Rivera*, 71 N.Y.2d 705, 708 (1988)), and there is no reason to suspect that another jury would have reached a different conclusion on the evidence." *Gajadhar*, 38 A.D.3d at 137. Petitioner has failed to demonstrate that "there was '[s]ome increment of incorrectness beyond error'" that warrants overturning either of the state courts' decisions. *Cox*, 387 F.3d at 197.

Petitioner's two remaining claims, which the state court did not review, are wholly without merit. Petitioner argues that defense counsel erred in failing to call Marlon Bennett. After the trial had concluded, Bennett was identified as the shooter and Petitioner's accomplice. Petitioner filed a CPL § 330.30 motion to set aside the verdict

15

based on newly discovered evidence. (Resp. Opp. Ex. W.) Petitioner believed that Bennett would have testified that one of the victims had a knife. (Resp. Opp. Ex. W at 7-8.) There is no evidence in the record to suggest that Petitioner ever identified Bennett to his lawyer as the shooter. In fact, Petitioner's § 330.30 motion, which was submitted by his trial counsel, suggests that his counsel was not aware that Bennett was the shooter. Furthermore, as with Fiki's testimony, defense counsel could have reasonably decided not to call Bennett because his testimony would have undercut Petitioner's position that he was not present at the scene.

Petitioner's only remaining claim is that defense counsel erred in failing to bring out the inconsistency in Detective Brennan's testimony regarding when he obtained a photograph of Petitioner. Brennan testified at trial that he had obtained the photograph January 27, 1994, even though an FBI document indicated that the picture had been provided May 2, 1994. (Resp. Opp. 63.) Petitioner objected during the trial that his counsel did not call the jury's attention to the inconsistency. The trial court concluded that it was "within counsel's prerogative" to conclude that the inconsistency was insignificant and not worth emphasizing at trial. (Resp. Opp. 63-64.) We agree with the trial court that the inconsistency was "minimal" and that counsel did not err in choosing not to emphasize the point at trial.

Petitioner has failed to establish that trial counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Petitioner's claim of ineffective assistance of counsel is denied.[1]

---

[1] If Petitioner cannot establish both *Strickland* prongs, his claim fails. "There is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *see also Cousart v. Hammock*, 745 F.2d 776, 778 (2d Cir. 1984).

## IV. Conclusion

The petition for a writ of habeas corpus is denied and the Court will not issue a certificate of appealability.

**SO ORDERED.**

Dated: August 4, 2010
New York, NY

_____
U.S.D.J.